## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILLIP MCCOY,

                *Petitioner*,

    v.

SUPERINTENDENT SMITH, *et al.*,

                *Respondents*.

CIVIL ACTION
NO. 17-2162

---

**PAPPERT, J.**                                                                    **July 5, 2018**

### MEMORANDUM

Phillip McCoy filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and a "Motion for Stay & Abeyance to Reserve for Amendment." (ECF Nos. 1, 8, 17.) Magistrate Judge Heffley subsequently issued a Report and Recommendation recommending the Petition and Motion be denied. (R&R, ECF No. 26.) After the Court granted McCoy's request for an extension of time to file objections, he filed a 65-page memorandum with numerous objections rehashing, for the most part, the same arguments that he presented in his Petition. (Objections, ECF Nos. 31, 31-1.) Upon consideration of the record, Magistrate Judge Heffley's R&R, and McCoy's objections thereto, the Court adopts the R&R and denies McCoy's Petition and Motion.

I

A

Angel Carrion was working as a manager at Platinum Club in Philadelphia on February 3, 2008. (Trial Tr., Sept. 23, 2009, Vol. 1, 36:12–15.) At approximately 1:40 a.m., while Carrion was with a friend at the bar, a woman told Carrion that someone

hit her while she was in the restroom. Carrion told a bouncer to escort the purported assailant and her group of female friends out of the club. (*Id.* 36–37.) The assailant's male friends—including McCoy—remained in the club. (*Id.* 38–39.) McCoy demanded that Carrion reimburse him for the $10 McCoy paid as a cover charge to enter the club. (*Id.*) A dispute ensued between the two and McCoy was escorted out of the club. (*Id.* 39–42.)

About fifteen minutes later, Carrion's friend wanted to leave for the night so Carrion walked her to the first floor exit which was located at the intersection of Torresdale Avenue and Paul Street. (*Id.* 43–44.) As Carrion unlocked the glass door to let his friend leave, Carrion saw McCoy and his friends walking southbound on Torresdale Avenue. Once McCoy saw Carrion standing in the doorway, McCoy turned away from his friends and walked towards Carrion. McCoy, screaming at Carrion, threatened to "light this [ ] bar up." While McCoy continued to shout obscenities and threats, Carrion remained inside, locked the glass door, turned his back on McCoy and began to walk away. As soon as Carrion turned away, he heard two or three "pops" and was shot twice in the back. (*Id.* 45–51.) Although Carrion did not see McCoy pull the trigger, he was "positive" that McCoy was the man yelling at and threatening him seconds before he was shot. (*Id.* 51.)

At McCoy's trial in the Philadelphia Court of Common Pleas, Police Officer Erica Coss, who was off-duty and at the Platinum Club on the night of the incident, testified that she had known McCoy for several years through her cousin, whom he was dating. (Trial Tr., Sept. 22, 2009, Vol. 1, 46–48.) Coss witnessed Carrion and McCoy's argument that night and described McCoy as angry, upset, and argumentative. (*Id.*

55–58.)  She further testified that once she left the club, she saw McCoy on Torresdale

Avenue.  (*Id.* 62.)  Coss explained that McCoy's friends were telling him to leave but

McCoy continued to yell obscenities at someone inside the club.  (*Id.*)  She then heard

gunshots and took cover because she didn't know where the shots were coming from.

(*Id.* 63–66.)

B

On September 25, 2009, the jury convicted McCoy of attempted murder (18 Pa.

Const. Stat. § 2502), aggravated assault (*id.* § 2702), carrying a firearm without a

license (*id.* § 6106), and possessing an instrument of crime (*id.* § 907).  *Commonwealth*

*v. McCoy*, CP-51-CR-008542-2008, at *1 (Pa. Ct. Com. Pl. Phila. Cnty. Apr. 11, 2011).

On November 13, 2009, the court sentenced McCoy to fifteen to thirty years'

imprisonment for attempted murder, three and a half to seven years' imprisonment for

carrying a firearm without a license, and two and a half to five years' imprisonment for

possessing an instrument of crime, all to run concurrently.[1]  *Id.*

McCoy filed a direct appeal contending that the evidence was insufficient to

support his conviction and the Superior Court of Pennsylvania affirmed the verdicts on

May 23, 2012.  *Commonwealth v. McCoy*, CP-51-CR-0008542-2008, at *1 (Pa. Ct. Com.

Pl. Phila. Cnty. Apr. 29, 2016).  McCoy did not seek review from the Pennsylvania

Supreme Court.  He then filed a petition under Pennsylvania's Post Conviction Relief

Act ("PCRA") on October 22, 2012.  *Id.* at *2.  Counsel was appointed to represent

McCoy, but after investigating McCoy's claims, filed a no merit brief and a petition to

withdraw pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988).

---

[1]	The court did not impose a sentence on the aggravated assault conviction because it merged
with the attempted murder conviction.

The PCRA court allowed McCoy's counsel to withdraw and on June 30, 2015 denied McCoy's petition. *Id.* McCoy appealed to the Superior Court and raised four issues: 1) whether trial counsel was ineffective for failing to contact potential alibi witnesses; 2) whether trial counsel was ineffective for failing to object to prejudicial remarks in the prosecutor's closing argument; 3) whether trial counsel was ineffective for failing to file certain post trial and post sentence motions; and 4) whether PCRA counsel was ineffective. *Commonwealth v. McCoy*, No. 2115 EDA 2015 (Pa. Super. Ct. Feb. 28, 2017). The Superior Court denied McCoy's appeal on February 28, 2017. *Id.*

McCoy filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on May 5, 2017 and amended the Petition on October 25, 2017 (Am. Pet., ECF No. 17). McCoy asserts twelve arguments which he claims entitle him to habeas relief. These arguments include, among others, challenges to the bill of information, the constitutionality of his sentence and several ineffective assistance of counsel claims.

II

A

McCoy asserts ten objections to Magistrate Judge Heffley's R&R, many of which contain sub-arguments. "[F]or the portion of the R&R to which no objection [is] made, the Court reviews the R&R for clear error."[2] *Harris v. Mahally*, No. 14-2879, 2016 WL 4440337, at *4 (E.D. Pa. Aug. 22, 2016). The Court reviews *de novo* the specific

---

[2] When reviewing those portions of the report to which no objection is made, the Court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee notes; *see also Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998). For the portions of the R&R to which McCoy has not objected, no clear error appears on the face of the record and the Court accordingly accepts Judge Heffley's recommendation.

portions of the R&R to which a party objects. *See* 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

B

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits federal courts' power to grant writs of habeas corpus. Under the Act, a federal court may not grant a writ "with respect to any claim that was adjudicated on the merits in State court proceedings [unless the state court's decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010). A state court ruling is "contrary to" clearly established Federal law if the court applies a rule that contradicts Supreme Court precedent or if the court confronts a set of facts that are materially indistinguishable from a Supreme Court decision but arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406–07 (2000). A state court ruling "is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009).

C

Before a federal court can grant a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. *Lambert v. United States*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claims to the state court; if he does not, the claims become procedurally defaulted and he may not raise them in federal court. *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). Federal courts are also prohibited from reviewing a petitioner's habeas claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and is adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

A petitioner may be exempt from the exhaustion requirement under three circumstances: 1) he demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law; 2) he demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice; or 3) he invokes the narrow *Martinez* exception. *Id.* at 750; *Martinez v. Ryan*, 566 U.S. 1 (2012). To establish cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000). To show prejudice, the petitioner must prove "not merely that the errors at…trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.*

The fundamental miscarriage of justice exception "will apply only in extraordinary cases, *i.e.,* where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* Asserting actual innocence requires the petitioner to "show it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition." *Hubbard v. Pinchak*, 378 F.3d 333, 339 (3d Cir. 2004).

Finally, under the *Martinez* exception, ineffective assistance of trial counsel claims are not procedurally defaulted if: 1) the default was caused by ineffective assistance of post-conviction counsel, 2) that occurred in the first collateral proceeding in which the claim could be heard, and 3) the underlying claim of trial counsel's ineffectiveness has some merit, analogous to the substantiality requirement for a certificate of appealability. *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).

D

The Supreme Court's two-part test in *Strickland v. Washington* governs claims for ineffective assistance of counsel. 466 U.S. 668 (1984). "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687)). With respect to *Strickland*'s first prong, there is a "strong presumption" that counsel's performance was not deficient. *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. With respect to prejudice, the

"[d]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The Court must consider the totality of the evidence before the jury in determining whether a petitioner satisfied this standard. *See Berghuis*, 560 U.S. at 389.

III

A

In his first objection, McCoy contends that Judge Heffley never addressed his claim that AEDPA is unconstitutional. (Objections I, 6–10.)[3] McCoy "moves this Court to find, as a matter of first impression" that AEDPA is facially unconstitutional. Specifically, McCoy contends that AEDPA violates Article III of the Constitution and the separation of powers doctrine because it encroaches "upon the power of federal courts by prescribing a procedure which mandates that federal habeas courts defer to state court findings on federal questions of law." (Objections I, 6.) All courts addressing the issue have determined that AEDPA does not violate Article III and the separation of powers doctrine, and this Court agrees. *See Cobb v. Thaler*, 682 F.3d 364, 374 (5th Cir. 2012); *Evans v. Thompson*, 518 F.3d 1, 6–10 (1st Cir. 2008); *Houston v. Roe*, 177 F.3d 901 (9th Cir. 1999); *Green v. French*, 143 F.3d 865, 874 (4th Cir. 1998). McCoy further asserts that AEDPA violates the Suspension Clause of Article I because AEDPA significantly limits the federal courts power to grant a writ of habeas corpus.

---

[3]     Objections I refer to ECF No. 31. Objections II refer to ECF No. 31-1. The cited page numbers refer to the ECF page numbers rather than those on McCoy's brief.

(Objections I, 6.)  The Suspension Clause is only violated when habeas corpus is rendered "inadequate or ineffective," *Swain v. Pressley*, 430 U.S. 372, 381 (1977), not when there are conditions or limitations on the proceeding.  McCoy has failed to show that § 2254 unduly burdens his right to petition for habeas corpus relief or how it was ineffective to test the legality of his detention.  Furthermore, neither the Third Circuit Court of Appeals nor any other court has found that AEDPA violates the Suspension Clause.[4]

McCoy also contends that Title I of AEDPA is unconstitutional as applied to him because he "is not a terrorist attempting to invade or rebel against the national security interests of this Nation…" and therefore "he falls outside its jurisdictional scope." (Objections I, 9.)  McCoy is incorrect.  When Congress introduced and passed AEDPA, it was described as an "[a]ct to deter terrorism, provide justice for victims, provide for an effective death penalty, *and for other purposes*."  Pub. L. No. 104–132, 110 Stat. 1214, 1214 (1996) (emphasis added).  Title I of the Act is devoted entirely to habeas corpus reform and § 2254 applies to "a person in custody pursuant to the judgment of a State court;" its applicability is not limited to terrorists.  28 U.S.C. § 2254(a).

---

[4]     To the extent that McCoy objects to AEDPA's constitutionality because it violates the Rules Enabling Act and the Supremacy Clause, his claim is similarly without merit.  McCoy seems to contend that AEDPA is unconstitutional because "all federal law is binding on the state courts" not just "clearly established Federal law, as determined by the Supreme Court…."  (Objections I, 3.) State courts have "inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."  *Burt v. Titlow*, 571 U.S. 12, 19 (2013).  Further, AEDPA "directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law.  If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody…violates the Constitution, that independent judgment should prevail."  *Williams v. Taylor*, 529 U.S. 362, 389 (2000).

B

In his second objection, McCoy claims that Judge Heffley improperly applied *Strickland*'s prejudice requirement to his ineffective assistance claims. (Objections I, 10–12.) The R&R correctly explains that to demonstrate prejudice, "the petitioner must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (R&R, 8–9 (quoting *Strickland*, 466 U.S. at 694)). McCoy, relying on *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), argues that other language from *Strickland* governs the prejudice analysis.

In *Weaver*, the petitioner argued that for an ineffective assistance of counsel claim based on a structural error[5] at trial, the proper prejudice inquiry should focus on "the fundamental fairness of the proceeding" and that the petitioner does not need to show that there is a "reasonable probability of a different outcome." *Weaver*, 137 S. Ct. at 1911. The Supreme Court expressly stated that it "need not decide" whether or not the petitioner's interpretation of *Strickland*'s prejudice prong was correct. *Id.* Moreover, the ineffective assistance of counsel claim pertained to a structural error rather than "simply an error in the trial process itself," which is analyzed differently. *Id.* at 1907. McCoy fails to show that his trial contained any structural errors.

McCoy further contends that Judge Heffley's use of a "doubly deferential" standard of review for an ineffective assistance of counsel claim is unconstitutional. (Objections I, 12–16.) AEDPA's standard is "intentionally difficult to meet" and the

---

[5] Structural errors include the total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of defendant's race, denial of the right to self-representation at trial, denial of the right to public trial, erroneous reasonable-doubt instructions, and seating of a juror who should have been removed for cause. *See United States v. Curbelo*, 343 F.3d 273, 281 (4th Cir. 2003) (collecting Supreme Court cases).

Supreme Court has held that AEDPA review must be "doubly deferential." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013).

## C

McCoy's third objection pertains to the *Martinez* exception. He believes Judge Heffley erred when she determined that he did not satisfy the *Martinez* requirements to overcome the procedurally defaulted ineffective assistance of counsel claims. (Objections I, 12.) The Court addresses each application of *Martinez* to which McCoy includes a substantive objection. The Court has also reviewed *de novo* Judge Heffley's determination that the *Martinez* exception does not excuse default for the remaining ineffective assistance of counsel claims and agrees that the claims lack merit.[6]

## D

In his Amended Petition, McCoy claims he is entitled to habeas relief due to violations of his Sixth and Fourteenth Amendment rights because the bill of information was defective. The Magistrate Judge determined that McCoy's claim was non-cognizable on habeas review, was procedurally defaulted since he did not raise it in state court and McCoy could not excuse the default based on *Martinez* or actual innocence. (R&R, 9–11.) In his fourth objection, McCoy objects to all aspects of the Magistrate Judge's determination.

---

[6]    McCoy further contends that Judge Heffley improperly applied AEDPA's certificate of appealability standard when analyzing the *Martinez* claims, pointing to that portion of the R&R which states: "To pursue [a *Martinez*] claim, a petitioner must show that his or her underlying ineffective assistance of counsel claim 'is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit' as defined by reference to the standard applicable to determining whether to grant certificates of appealability." (R&R, 13.) The Third Circuit has described the *Martinez* analysis in the same manner. *Cox*, 757 F.3d at 119 ("the underlying claim of trial counsel ineffectiveness is 'substantial,' meaning 'the claim has some merit,' analogous to the substantiality requirement for a certificate of appealability").

To the extent that McCoy claims that the bill of information failed to comply with Pennsylvania Rule of Criminal Procedure 560 (Reply, 10–16, ECF No. 25), the claim is non-cognizable on federal habeas review. *Saunders v. Lamas*, No. 12-7131, 2015 WL 9451022, at \*19 n.37 (E.D. Pa. Aug. 13, 2015). Although McCoy's claim that the bill violated his federal constitutional rights is cognizable on federal habeas review, the claim is procedurally defaulted since he did not raise the issue in state court and is unable to show that the default should be excused pursuant to the *Martinez* or miscarriage of justice exceptions.

McCoy seems to contend that the bill is defective because it did not contain the offense elements and facts supporting the charge. (Objections II, 26.) A bill of information is sufficient if it "contains the elements of the crime, permits the accused to plead and prepare an adequate defense, and allows the disposition to be used as a bar in a subsequent prosecution." *McCalvin v. Mooney*, No. 14-572, 2014 WL 7008584, at \*2 (E.D. Pa. Dec. 11, 2014) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Here, the bill put McCoy on notice of the offenses with which he was charged, the elements of the offenses, and the facts associated with them. (Resp. in Opp., Ex. C, ECF No. 22.) For the charge of attempted murder, the bill indicates that on February 3, 2008, McCoy "intentionally and with malice attempted to cause the death of another human being" and states that the victim was Angel Carrion. (*Id.*) For the charge of aggravated assault, the bill states that McCoy "attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly, or recklessly under the circumstances manifesting extreme indifference to the value of human life," and

identifying the victim as Angel Carrion.  (*Id.*)  McCoy's claim is meritless and neither his trial nor PCRA counsel were ineffective for failing to raise it.[7]

McCoy further contends that Judge Heffley incorrectly concluded that the miscarriage of justice exception did not apply.  (Objections I, 28.)  The R&R explains that to satisfy the exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  (R&R, 10 n.3) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  To establish actual innocence, the petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" and he must support his allegations of constitutional error with "reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  (*Id.*)  McCoy did not present any evidence demonstrating his innocence.

McCoy urges the Court to expand the *Schlup* standard and relies on *House v. Bell*, 547 U.S. 518, 537 (2006) for the proposition that the Court may consider "other evidence" in addition to the traditional scientific exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence not presented at trial to excuse default.  (Objections, I, 30.)  His argument is misplaced.  First of all, the Third Circuit Court of Appeals has consistently relied on *Schlup*'s framework and standards when evaluating claims of actual innocence.  *See Coleman v. Greene*, 845 F.3d 73, 76–77 (3d Cir. 2017).  Further, in *House*, the new evidence at issue was DNA testing which contradicted the evidence presented at trial.  Here, McCoy asserts that the "fatally

---

[7]     McCoy also objects to Judge Heffley's determination that the bill of information was not deficient for charging claims in the disjunctive but provides no basis for this objection.  In any event, Judge Heffley correctly determined that his claim was meritless.  (R&R, 12 n.4.)

defective bills of information…constitutes the requisite new exculpatory evidence" that is required.  (Objections I, 29.)  The bill of information was not fatally defective; even a defective bill, however, is not evidence that McCoy is actually innocent.

E

McCoy next objects to the Magistrate Judge's determination that the Violent Offender Incarceration and Truth in Sentencing Program (VOITIS) is constitutional. (Objections I, 31–34.)  McCoy asks the Court to hold "as a matter of first impression" that the program violates the Tenth Amendment and principles of federalism.  (*Id.* at 34.)  In his objection, McCoy only speaks to the merits of his argument; he does not address Judge Heffley's accurate conclusion that the Tenth Amendment VOITIS claim is procedurally defaulted.  To the extent that McCoy attempts to invoke the *Martinez* exception, his claim fails because trial counsel was not ineffective for failing to raise this argument.

The VOITIS Program provides funds to states to build or expand correctional facilities for violent offenders.  A state can receive funds if it provides assurances that it will implement policies and programs "to ensure that violent offenders serve a substantial portion of the sentences imposed" or the state "demonstrates that it has implemented truth-in-sentencing laws that require persons convicted of a violent crime to serve not less than 85 percent of the sentence imposed."  United States Department of Justice, *Department of Justice Resource Manual*, Office of Justice Programs Crime Act Offices Title 1 No. 15 (3d ed. 2018).  While the Tenth Amendment "prevents the federal government from 'controlling' state legislatures through congressional command, it does not preclude Congress from inducing state action through the

promise of federal funding." *Williams v. Bitner*, 285 F. Supp. 2d 593, 601 (M.D. Pa. 2003). The receipt of federal funds through the VOITIS grant program does not violate the Tenth Amendment because states can choose whether to accept the conditions connected to the acceptance of the funds. Further, the federal government has an interest in protecting the public and the funding is "reasonably calculated to address" the federal interest. *South Dakota v. Dole*, 483 U.S. 203, 209 (1987). For these and presumably other reasons, no court has ever held that VOITIS is unconstitutional.

F

In his sixth objection, McCoy argues that the Magistrate Judge incorrectly determined that his claim that trial counsel was ineffective during closing arguments is procedurally barred, not excused by *Martinez*, and substantively meritless. (Objections I, 34–36.) McCoy asserts that his lawyer was ineffective because counsel "planted seeds into the juror's minds" that McCoy had a gun on the night of the shooting despite the lack of any witness testifying that they saw McCoy with a gun. During closing, counsel stated:

> Now, the Commonwealth may say to you, well, he could have got a gun outside. You know what, he could have. But you know what the problem with that is, they have to prove that. He could have. It could have fallen from the sky. But did you hear one piece of evidence to how he would have had a gun out there? How did he have a gun outside? He didn't have it going in. He didn't have it going out, and moments later he has a gun. How did he have a gun? And you know what you're left with is guesswork, speculation.

> If you guys go back in that jury room and you answer the question, how did he get a gun, each one of you might have a theory. He might have a friend out there who had a gun. He might have had a car out there that had a gun. It might have been in the limo. A guy could have handed it to him. All of those are possible. None of them are proven. And that's the essence of what I am trying to tell you. The fact remains, he did not have

> a gun going in or coming out of that bar moments before he supposedly is
> a shooter.

(Trial Tr., Sept. 24, 2009, Vol. 1, 30:7-31:5) (emphasis added).

This did not fall below an objective standard of reasonableness. Counsel argued that McCoy entered the club without a gun and that no witness testified that they saw McCoy with a gun. (*Id.* 29–31.) Counsel emphasized that the Commonwealth failed to prove its case and that there was no evidence that McCoy had a gun. Counsel's strategy is clear from the record and "counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his [ ] closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003). Moreover, McCoy's claim is procedurally barred because he did not present it in state court and it is not excused by *Martinez* because trial counsel's performance was not deficient.

G

McCoy next objects to the Magistrate Judge's determination that trial counsel was not ineffective for failing to object to an improper "inference" jury instruction and that the claim is procedurally defaulted. McCoy argues that the instruction, which told the jury to "consider all evidence relative to the question of who committed the crime, including the testimony of any witness in which identity or non-identity of the perpetrator of the crimes may be inferred" improperly relieved the Commonwealth from the burden of proving McCoy's guilt beyond a reasonable doubt. (Trial Tr., Sept. 24, 2009, Vol. 1, 75:10-15.)

The court's instruction was almost identical to Pennsylvania's Suggested Standard Criminal Jury Instruction on Identification Testimony, although it did not

contain the final sentence of the instruction which reiterates that the jury "cannot find the defendant guilty unless [they are] satisfied beyond a reasonable doubt...that it was the defendant who committed [the crime]." *See* Pa. SSJI § 4.07A. Even though the instructed charge was not identical to the model instruction, counsel was not deficient in failing to object to the charge for several reasons. The charge does not require the jury to make any inference. Furthermore, the next instruction the court gave the jury was that "to find [McCoy] guilty of this offense you must find that the elements have been proven to you beyond a reasonable doubt…[f]irst, that [McCoy] did a certain act…." (Trial Tr., Sept. 24, 2009, Vol. 1, 75:19-24.) Moreover, the court instructed the jury at the outset that McCoy is "presumed innocent throughout the trial unless and until you conclude based upon a careful and impartial consideration of the evidence, that the Commonwealth has proven [McCoy] guilty of the crimes charged against him beyond a reasonable doubt." (*Id.* 63:21-64:1.) The court further instructed the jury that the Commonwealth "always has the burden of proving each and every element of the crimes charged and that the defendant is guilty of those crimes beyond a reasonable doubt." (*Id.* 64:3-7.) Finally, the court instructed the jury about what it means to have a "reasonable doubt" and the instruction was identical to Pennsylvania's Suggested Standard Criminal Jury Instruction 7.01. *Compare* Pa. SSJI § 7.01, *with* Trial Tr., Sept. 24, 2009, Vol. 1, 64:2.

H

The Magistrate Judge determined that McCoy's claim that trial counsel was ineffective for failing to object to the attempted murder jury instruction was procedurally defaulted and not excused per *Martinez* because trial counsel was not

17

ineffective. (Objections I, 12, 40.) The court's attempted murder instruction was identical to Pennsylvania's Suggested Standard Criminal Jury Instruction 12.901A.1. *Compare* Pa. SSJI § 12.901A.1, *with* Trial Tr., Sept. 24, 2009, Vol. 1, 75:19-77:2. The instruction required the jury to find that McCoy had "the specific intent to kill" which accurately reflects Pennsylvania law. *See Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa. Super. Ct. 2004).

McCoy contends that providing the model jury instruction is not dispositive because it is only "suggested" and that "*Geathers* is legally erroneous." (Objections I, 39-40.) Numerous Pennsylvania courts have relied on *Geathers*' recitation of the law. *See Commonwealth v. Brown*, No. 834, 2018 WL 2408427, at *4 (Pa. Super. Ct. May 29, 2018); *Commonwealth v. Fortson*, 165 A.3d 10, 15 (Pa. Super. Ct. 2017); *Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa. Super. Ct. 2016). Since trial counsel was not deficient in failing to object to a legally correct instruction, the *Martinez* objection does not apply.

I

In his eighth objection, McCoy contends that the Magistrate Judge erred when determining that McCoy's claim that trial counsel was ineffective for failing to object to the aggravated assault jury instruction was procedurally defaulted and not excused by *Martinez*. (Objections I, 12, Objections II, 3-6.) Specifically, McCoy argues that Judge Heffley misinterpreted state law pertaining to aggravated assault and that the instruction improperly defines "recklessness." (*Id.*)

The trial court's instruction on aggravated assault was, again, identical to Pennsylvania's Suggested Standard Criminal Jury Instruction. *Compare* Pa. SSJI § 15.2702B, *with* Trial Tr., Sept. 24, 2009, Vol. 1, 77:3-78:15. Moreover, a trial court has

broad discretion in phrasing its instructions to the jury so long as the law is clearly, adequately, and accurately presented to the jury. *Commonwealth v. Williams,* 959 A.2d 1272, 1286 (Pa. Super. Ct. 2008). The given instruction, in part, states:

> A person acts recklessly with respect to serious bodily injury when he consciously disregards a substantial and unjustifiable risk that serious bodily injury will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the defendant's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the defendant's situation[.] <u>It [is] shown by the kind of reckless conduct from which a life-threatening injury is almost certain to occur.</u>

(Trial Tr., Sept. 24, 2009, Vol. 1, 77:25-78-13) (emphasis added).

Under Pennsylvania law, "for the degree of recklessness contained in the aggravated assault statute to occur, the offensive conduct must be performed under circumstances which almost assure that injury or death with ensue." *Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (Pa. 1995). The given instruction comports with Pennsylvania law and trial counsel was not ineffective in failing to object. *See id.*; *Commonwealth. v. Brown*, No. 2202, 2014 WL 10805985, at *4 (Pa. Super. Ct. Sept. 22, 2014).

## J

Judge Heffley determined that McCoy's claim that his sentence was unconstitutional is procedurally defaulted and meritless. (R&R, 26–28.) In his objection, McCoy clarifies that he is not challenging the state court's sentencing discretion but instead challenges his sentence because it violates his federal constitutional rights. (Objections II, 6.) Specifically, he contends that his sentence is unconstitutional because it exceeded the statutory minimum sentence that existed prior

to the Commonwealth's participation in VOITIS, which he incorrectly believes is unconstitutional. (Am. Pet. at 15(c), Reply 42–59, Objections II, 6–7.)

McCoy further contends his sentence is unconstitutional because it violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 133 S. Ct. 2151 (2013). *Apprendi* is not implicated when a sentence does not exceed the applicable statutory maximum. *See United States v. Pavulak*, 700 F.3d 651, 675 (3d Cir. 2012). McCoy's sentence for each conviction did not exceed the statutory maximum. *See Commonwealth v. McCoy*, CP-51-CR-0008542-2008, at *18 (Pa. Ct. Com. Pl. Phila. Cnty. Apr. 29, 2016). McCoy's *Alleyne* challenge similarly fails. In *Alleyne*, the Supreme Court held that any fact that increases the mandatory minimum sentence must be found by a jury beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2163. McCoy was not sentenced to a statutory minimum, *Commonwealth v. McCoy*, No. 2115 EDA 2015, 8 n.9 (Pa. Super. Ct. Feb. 28, 2017), and even if he was, *Alleyne* does not apply retroactively to cases on collateral review, *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014).[8]

## K

In his tenth objection, McCoy contends that the Magistrate Judge erred in her determination that his sufficiency of the evidence and speedy trial claims were meritless.[9] With respect to his sufficiency of the evidence claim, McCoy claims that the

---

[8]    McCoy asks the Court to find that the Third Circuit Court of Appeals implicitly overruled *Reyes* in *In re Hoffner*, 870 F.3d 301 (3d Cir. 2017). The court did not. The issue in *Hoffner* was whether the petitioner made a *prima facie* showing of the pre-filing requirements for a successive habeas petition in light of the Supreme Court's ruling in *Johnson v. United States*, 135 S Ct. 2251 (2015), which the Court later held was retroactive to cases on collateral review, *see Welch v. United States*, 136 S. Ct. 1257 (2016). Unlike *Johnson, Alleyne* does not apply retroactively to cases on collateral review.

[9]    As an initial matter, McCoy asserts that the Commonwealth waived their opportunity to respond to the sufficiency of the evidence claim since it did not address the claim in its response to

only thing the Commonwealth "proved" was that he was at the club on the night of the shooting, he screamed at the victim before the shooting, and that he threatened to "light up" the club—not "light up" the victim. (Objections II, 15.) He also argues that assuming he was the shooter, the trajectory of the bullets could have been altered by the glass door and therefore it shows that he didn't intend to actually shoot the victim. (*Id.*)

When reviewing a sufficiency of the evidence claim in a habeas petition, "the critical inquiry…does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." *Jackson v. Virginia*, 433 U.S. 307, 319 (1979). Instead, the Court must review "the evidence in the light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

The Superior Court found that McCoy's insufficient evidence claim was meritless because viewing the facts in the light most favorable to the Commonwealth, there was evidence and testimony to support a finding that McCoy stood outside the club and shot the victim in the back. *Commonwealth v. McCoy*, No. 3632 EDA 2009, at *9–11 (Pa. Sup. Ct., May 23, 2012). The court relied on Carrion's testimony that he saw McCoy on Torresdale Avenue, that once McCoy saw Carrion, McCoy left his friends and started screaming while walking towards Carrion and that as soon as Carrion turned away from McCoy, Carrion was shot in the back. Carrion identified McCoy as the man who fought with him in the club earlier in the evening and as the man who was screaming at him seconds before he was shot. Further, Officer Coss testified that she also saw

---

his Petition. (Objections II, 15.) McCoy relies on *Eberhert v. United States*, 546 U.S. 12 (2005) which is not applicable as it addressed the timeliness of a response to a Rule 33 motion.

McCoy yelling at someone inside the club and saw McCoy yelling outside of the club seconds before Carrion was shot.  Since a rational trier of fact could have concluded beyond a reasonable doubt that McCoy was guilty, the Superior Court's determination that the evidence was sufficient to support McCoy's convictions was not contrary to or an unreasonable application of *Jackson*.

McCoy's claim that his federal constitutional right to a speedy trial was violated is procedurally defaulted since he did not raise the issue in state court.[10]  *Martinez* does not excuse the default because trial counsel was not ineffective for failing to raise the issue.  Courts consider four factors when determining whether a defendant's Sixth Amendment right to a speedy trial has been violated.  The length of the delay triggers the analysis of the remaining three factors which are the reason for the delay, the defendant's assertion of his right and the prejudice the defendant suffers as a result of the delay.  *Woods v. Lamas*, 631 F. App'x 96, 101 (3d Cir. 2015).

The Magistrate Judge determined that the approximately 19 month delay between McCoy's arrest and trial was "likely sufficient" to trigger the speedy trial inquiry but further determined that some of the delay was due to defense counsel's requests for continuances.  McCoy specifically objects to the Magistrate Judge's determination that some delay was due to defense counsel's requests since the R&R did not "explain how much…time is attributed to Petitioner."  (Objections II, 15.)  The docket sheet indicates that the defense was responsible for some of the delay although the exact amount of time is unclear.  *See* Docket, *Commonwealth v. McCoy*, No. CP-51-

---

[10]     During the state court proceedings, McCoy only raised the claim that he was denied a speedy trial in violation of the rules of criminal procedure; he did not argue that his federal constitutional right to a speedy trial was violated.  His federal constitutional claim is therefore procedurally defaulted unless he qualifies for an exception.  *See Mitchell v. Commonwealth*, No. 17-3538, 2018 WL 491008 (E.D. Pa. Jan. 18, 2018).

CR-0008542-2008, at *7–9 (Pa. Ct. Com. Pl. Phila. Cnty.).  McCoy further objects to the determination that he did not suffer prejudice as a result of the delay.  (R&R, 35; Objections II, 16.)  He asserts that "prejudice is presumed" since he did not get a speedy trial.  McCoy is incorrect.  The prejudice factor "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."  *Barker v. Wingo*, 407 U.S. 514, 532 (1972).  Those interests include preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired.  *Id.*  McCoy did not claim how he was prejudiced by the delay in any way other than there simply being a delay.  *See Heleva v. Brooks*, No. 07-1398, 2018 WL 338629, at *7 (M.D. Pa. Jan. 9, 2018).  Considering the factors, McCoy's objections, and a *de novo* review of the R&R, McCoy has not established that his trial counsel was ineffective for failing to raise a meritless claim and the *Martinez* exception does not excuse the procedural default.

IV

For the reasons above, the Court adopts the R&R, overrules McCoy's objections and denies and dismisses McCoy's Petition and Motion.  An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.